Final case today, 2017-1798 Sumitomo v. Emcure. Mr. Hugh, please proceed. Good morning. May it please the Court, Christopher Hugh, Blank, Rome for Appellants. This appeal involves the interpretation of a single claim of the 372 patent in suit. That claim is the only one asserted in this litigation. And to put it in context, it's one of 20 claims in the patent in suit. Other claims, and it's very narrow, it's Claim 14. The other claims in the patent, including Claims 1, 6, and 11, are very broad. And conservatively, they cover more than 2 billion compounds. So broad statements in this patent about the scope of the invention as a whole really have very little pertinence to the interpretation of Claim 14. Here's the thing that I, admittedly a non-chemical-loving person, had with this. Is this the R or the S enantiomer in Claim 14? Which one is it? It's the minus, I believe. What does that correspond to, R or S? Is it the R or the S? The patent doesn't use R or S. Is it the same as the residue? I believe it is. But that term doesn't appear in the patent because that's the commercial embodiment that came out years later. Latuda, right? This is Latuda. We're talking about Latuda. Yes. So this is the negative enantiomer depicted here. There's no positive enantiomer depicted here, correct? That's correct. But nobody is arguing to me that this claim is limited to the negative enantiomer, which would, in fact, cover the infringing product. That's correct. That's a very, very critical admission by the other side, that it doesn't cover the negative enantiomer alone, which is the one depicted. And there's a reason for that. And the reason is that the specific intrinsic evidence for Claim 14 is so strong that there's no way to say it only covers the negatives. In your intrinsic evidence, I understand you to be saying that one of Ordinary and Scalding Art, looking at what's depicted in Claim 14, would understand that that's one way to indicate a racemic mix. Well, yes, and not just in the art in general, but in this specific patent, that's exactly the way to go. Can we stick for a minute just to plain claim language and how one of Ordinary and Scalding Art would understand it? Setting the specification aside for a minute. Okay. Okay. So you have some extrinsic evidence. No, we have intrinsic evidence. Well, just for a minute. Just for a minute. Okay, I want to talk about what is depicted in Claim 14, and I want to specifically ask you, I understand you're saying that one of Ordinary and Scalding Art would understand that this would at least encompass a racemic mix. Do you agree that one of Ordinary and Scalding Art, looking at what's depicted in Claim 14, would understand that it also depicts the negative enantiomer? Not in light of the specification. I understand your position is that in light of the specification, it should be limited to the racemic mix of Compound 101. But I'm asking you, just looking at the plain claim, looking at that structural compound depicted there, would one of Ordinary and Scalding Art understand that that's one way to depict the negative enantiomer? The way you phrased it, the answer is yes, it could, but not in this patent because of the intrinsic evidence that relates specifically to the claim. Okay. The answer is absolutely yes, because it could be used, that's how you would depict one enantiomer. But that's not how it's used here. I thought that if you were going to depict the negative enantiomer and the negative enantiomer only as opposed to the racemic mix, you would actually have a negative on the left before the whole depiction of the formula like you do in some of your embodiments in the pictures. That's one way to do it. But the other way is the way they did it, which is to show the solid triangle and the dotted lines, which shows those, what are they called, stereogenic carbons with something poking out and something going back. That's the other way. But the reason you can't interpret it that way in this patent is because the only person of ordinary skill would pick up the claim and look at it and say there's a formula there. What does it mean in the context of this patent? The only other place this formula appears in the specification of the column 30 is at the bottom. And there, this formula, the only place it appears is specifically labeled compound 101. There's a 101 under it. If you go to columns 31 and 32, it makes clear that compound 101 is the racemic mixture. So this patent uses this structural formula as a shorthand for the racemic mixture because compound 1 is separate and distinct from its individual constituent enantiomers. When you say the picture appears at the bottom of column 30, that's a salt. No, the salt is not what determines whether it's compound 101. It's the structure on the left. Yeah, but that is a salt, right? That's what the HCL is at the end of that. You're right. You can have compound 101. I guess I just want to be clear that what is at the bottom of page 30 is not the same thing in column 14 because what's in claim 14, because what's at the bottom of column 30 is a salt, and what's at claim 14 is not a salt. Well, in claim 14 it says, or an acid addition salt thereof. So the structure is the same. It's not the salt that determines whether it's 101. It's whether you have the structure, and the structure can appear in many forms of acid addition salts. The patent has a tartrate salt that has hydrochloride, so that's not what determines whether it's 101. That's clear in columns 31 and 32. So what's clear is that 101 itself is the racemic mixture. That's the intrinsic evidence. There's a direct link between claim 14 and compound 101, which is the racemic mixture. What about the existence of compound 105, which is the negative enantiomer? Yes. What about the existence of that? Why doesn't that provide support that if one of our ordinaries only are looking at claim 14 would understand that that kind of depiction is used to connote either the negative enantiomer or a racemic mix. Okay. Why doesn't the existence of compound 105 make it so it wouldn't be appropriate for the claim to be limited to compound 101? All right. There are several reasons for that. First, compound 101 is – there's no dispute that it's the racemic mixture. They don't dispute that, and it is the racemic mixture. Compound 101 then is described as being broken out into its constituent enantiomers. They don't dispute that compound 101 is, in fact, a racemic mixture? I believe that's correct. There's no – Because even though it doesn't say it anywhere and it doesn't give percentages or ratios anywhere, you think just the absence of the polar light data or whatever is what would teach somebody that that's the reason we're not providing that data is because you don't have it for a racemic mix? Right. Exactly. And that's one reason. But also when you look at the subsequent sub-examples, you can see that when they break 101 up, you get equal amounts of the two enantiomers, plus and minus, that have equal and opposite optical rotation, which tells you that 101 had to have them both, or you couldn't split it into two. No, it had to have them both but didn't have to have them in equal amounts. That's the way they exist in nature. That's just the way it is. That's chemistry. But you can have a mixture that isn't equal amounts. Sure, but you have to create it out of the two constituents. These things are made naturally, and that's the way they exist, because in nature the two enantiomers generally exist in 50-50 mixtures unless you take special steps to separate them, which they didn't do until after they made it. So let's assume that compound 101 is a racemic mix, and nobody disputes that. But I guess part of the problem is a skilled artisan looking at claim 14 would understand that to depict the negative enantiomer, and I at least am having a little trouble getting over the idea that the racemic mix disclosed in compound 101 somehow narrows the plain meaning to a claim 14. Okay, but you can't read claim 14 in a vacuum. When you look at column 30, where the structure that is depicted in claim 14 is shown and labeled as compound 101. That's a really stupid question. Why do you want this? What if I just construe it as the negative enantiomer? Claim 14 is limited to the negative enantiomer. You still have the exact same judgment. Am I wrong about that? If it's just the negative enantiomer, I believe that's correct. Okay, you're not at risk for a change to the validity of the patent? That's a different issue, Your Honor, that wasn't before the court. So if I were to hold this for limited to the negative enantiomer, nothing about this judgment would change, correct? I believe that's correct. But that would be inconsistent with the intrinsic evidence, and I have more intrinsic evidence if I can get to that. So in columns 31 and 32, the patent makes clear that compounds 102, 103, 104, and 105, which are various salt forms of the enantiomers of compound 101, are separate and distinct compounds. They're numbered separately. The properties are given separately. And most importantly, at column 2, lines 9 through 12, the patent says there are two objects to the compounds of this invention. One, they have antipsychotic activity. Two, they have reduced side effects. You're totally losing me. You're going really fast, and I don't understand what I'm supposed to take away from column 31 and 32, which tells me that claim 14 is limited to a racemic mixture only and does not include a product that is sold using exclusively the negative enantiomer. Okay, well, the issue there, Your Honor, is I think you're accepting the argument that somehow this claim was intended to cover the commercial product, which wasn't even known at the time, and we have to go on the intrinsic evidence. No, I'm not assuming anything. Claim 14 is a depiction of the negative enantiomer, and so I have to be honest. I was really confused when one side is arguing, no, it's a depiction of racemic mixture only, and the other side is arguing, no, it's a depiction of negative, positive, and everything in between. I was surprised that nobody was standing here arguing to me that claim 14 is depicting and claiming the negative enantiomer. Okay, let me back up then. Do you believe that this patent doesn't disclose it? I think it discloses the negative enantiomer. I don't say it isn't disclosed. It's not within this claim properly construed in light of the intrinsic evidence, and both sides agree on that, and the reason is the fact that... No, both sides don't agree on it. His claim construction includes all negative, all positive, and everything in between. I'm sorry. I mean as to the racemic mixture. There's no disagreement that it covers the racemic mixture, which means they agree... But I don't have to accept a concession on a question of law. I understand. This is a question of law. You can both stand here and argue to me that a statute means X, and if I don't agree or if I think it means Y, guess what? It means Y. I don't have to accept some concession on a question of law, so I'm trying to figure out what this means. All right, so let me back up. To understand what the formula means, a person of ordinary skill would look at the specification and file history to understand what it means. That formula in Claim 14 admittedly depicts the negative enantiomer, but the way it's used in this patent shows that it's labeled as compound 101, which is the racemic mixture. So the way it's defined in this patent, it's used as a shorthand. That's structural formula, which is the negative isomer. It sounds as if you're saying it's an express definition, almost, in the specification. I think that's fair. I think that's fair. It's labeled 101, and then the specification in columns 31 and 32 show that it's separated, and then the enantiomers are labeled as separate compounds, and they're treated as separate compounds, so this patent makes it clear that the racemic mixture is separate and distinct from its constituent enantiomers. That's what the intrinsic evidence says. And the data that I was referring to, which I started to get into, column 2, lines 9 through 12, it says the compounds of this invention have two attributes, antipsychotic effect, reduced side effects. And if you look at the tables 2, 3, 4 on activity, antipsychotic activity, and reduced side effects, tables 5 and 6, the only compound that shows up there is 101. That's the racemic mixture. Compound 105 appears only in table 2, so there's a little bit of data on activity but not a lot, and there's no data on the reduced side effects. And notably, compound 104, which is the mirror image of 105, doesn't appear in any of the tables, so there's no teaching that somehow claim 14, which is directed to compound 101, somehow includes things that aren't even shown to be effective for the two objects of the invention. So it sounds as if what your argument is is because there's more data for 101 than 105 in all the other compounds, it must be that the inventor in writing this, or in presenting this claim, intended to limit it to 101. That's in addition to the fact that the structural formula that is in claim 14 is the one labeled as 101, which is the racemic mixture, so it's just piling on. Where is the formula for 105 depicted? There is none. There is none, not 105 per se, no. And there's more. The file history is entirely consistent. They canceled all the original claims and added some new claims. They were faced with restriction requirements. The examiner said, too many different inventions, narrow it down. And in at least two instances, the applicant said, we are electing the species of compound 101. I want to ask you a question about the technology. Why are there not four enantiomers, given that there's two chiral carbons in what is depicted in the claim? I think because here, as I understand this, and, again, my chemistry is a little rusty, it's because there are only two possible combinations. This won't show up too well on a date, but it's either this way or that way. So there are only two combinations. Those two carbons have only one, each of them has only one thing that can be on there, and so it's either this way or that way, and the other one has to be the other way. So there are only two combinations. That's my understanding. All right. Mr. Hugh, we have exhausted all of your time, including your rebuttal time. I'll restore two minutes. Let's hear from Mr. Ratliff. Is it Ratliff? Ratliff, Your Honor. Ratliff. Good afternoon. May it please the Court. My first point is that the clearly erroneous standard applies, and my opponents have not and cannot overcome that standard. When you consider everything that my opponents have argued— When you say the clearly erroneous standard applies, this is claim construction. Claim construction is de novo. The ultimate question of claim construction is de novo. However, here, my opponent's argument is based upon two book excerpts. No. He argued two book excerpts. He also argued about 10 other pieces of prior art and had an expert report as well. The District Court, for whatever reason, decided not to consider any of that other extrinsic evidence. The District Court did address those two book excerpts, and so I would have to review the District Court's conclusion about what those two book excerpts tell me for clear error, but he hasn't said a word about those book excerpts as he stood up here today. Instead, we're all talking about claim construction. That's a question of law. What the court held on two book excerpts, that's a question of fact, but it didn't look at any of the other extrinsic evidence of which a mountain was presented. I don't understand why it chose two and none of the others to address, but I don't see how this could possibly be viewed as clear error standard of review. Well, Your Honor, it's because the book excerpts are foundational to my opponent's argument. That's how they make the leap from going from claim 14, depicting loracidone, to excluding loracidone, and limiting to a racemate. There's no other argument. He said earlier that it's the specification that he's relying on to exclude the negative enantiomer. What I heard him to be saying was that the intrinsic evidence supports a construction that would cover both the negative enantiomer and the racemic mix, but it's the specification then, the intrinsic evidence, that provides a special definition that in this case would make it so claim 14 is limited to the racemic mix. So that, I think, is a legal question because he's talking about interpreting the claim in light of the specification. Well, Your Honor, that's what he's trying to argue, but that's what wasn't... Let's assume that's what he's arguing.  I think here to find for the appellants, it's based upon a clear error standard because it's foundational, their book excerpts, to make that construction, to make the leap from going from depiction of a single enantiomer into a racemic mixture. My opponents actually agree that the claim depicts an enantiomer. They also agree that at page 9 of their brief, that the structure drawn for Compound 101 is different. But this is a real problem. I can't even believe you're standing here making this argument because I don't understand how you don't see how it undermines your case. If you're telling me that the plain meaning of claim 14 to a skilled artisan as assessed by the district court was a negative enantiomer, then this district court absolutely erred in the construction he adopted to include everything, negative, positive, racemic, and all mixtures in between. Well, Your Honor, at the very least, the claim certainly... Do you not see that? Do you not see how your argument undermines your own construction? No, Your Honor, because our argument is informed by the intrinsic evidence. So the claim literally depicts an enantiomer, which is loracinone, that they agree. And then if you... Wait, wait. What is your argument? What do you think the plain meaning to a skilled artisan of what is depicted in claim 14 is? What is your client's argument on that position? It depicts the enantiomer, which is loracinone. A negative enantiomer, correct? Yes, Your Honor. Forget about talking about the accused device. Just say a negative enantiomer. Be a negative enantiomer. Because we're not supposed to rely on the accused device to interpret a claim. Understood, Your Honor. So you're saying claim 14 depicts the negative enantiomer. It depicts the negative enantiomer. And when you read that claim in light of the specification, you understand from the specification in particular at column 4, lines 51 through 53, that it talks about the invention, including stereo and optical isomers, and that this invention is intended to cover those enantiomers, as well as mixtures thereof. Why did you not argue that this claim covers the negative enantiomer and nothing else? Because that's not the true spirit of the invention and what the specification teaches us. The specification teaches us that claim 14 is directed to a genus of compounds. So if you look, for example, at claim 14 and just looking at it, that picture, what is it associated with? Well, my opponents agree that it's associated with compound number 105. They agreed to that in their brief at page 13. And then where do you see compound 105? It's in the context of example 1. And example 1 talks about a genus of compounds. It talks about a mixture. It talks about the plus and the minus enantiomers. That's a self-described preferred example. Can you point me to where in the specification you're relying on where you say that compound 105 is in example 1? Yes. So if we turn to the appendix at 85 and 86, columns 30 of the patent, that's where we see the introduction to example 1. And example 1 has various subparts. We have example 1A through example 1E, which ends on column 32. And so the introduction to this picture that's depicted here is the structure that's associated with all of these compounds that are in example 1, this subgenus, ending with compound number 105, which my opponents agree is literally depicted in the claim. And we know, Your Honor, that the construction that my opponents argue isn't a logical one because it would exclude the preferred embodiment that they say is literally depicted in the claim. And the only reason that they get there is because, again, they look at the claim, they recognize that it depicts the minus enantiomer, and then they argue based upon their book excerpts that a person of ordinary skill in the art would understand that to be a racemic mixture. The district court discredited that. That's foundational to their argument. What about their argument on appeal? They seem to have maybe modified it a little bit. As we hear today, it's that compound 101 is the only one that's depicted as being exactly what's shown in claim 14. Well, if they're arguing that, Your Honor, then that's inconsistent with the brief because they certainly say in their brief before this court at page 9, they recognize that there's a difference between compound 101 and D14. And they say the only difference between compound 101 and D14 is that compound 101 includes HCL, referring to the hydrochloride salt. And we also have their expert who has admitted that compound 101 includes the hydrochloride salt, and it is the hydrochloride salt. Maybe I didn't ask my question well, which is that their argument seems to be that on the specification alone, they can limit the claim to the racemic mix. How do you respond to that argument, setting aside the extrinsic evidence? Well, I respond, where does that come from? They're trying to import limitations from the specification into the claim? I think, as I understand it, is that the data is provided for compound 101, and so we should understand from that that that is the one compound that was intended to be claimed in claim 14. Your Honor, well, that's not how claim construction works. Certainly, compound 101 is featured. It's among one of the preferred embodiments in the patent. But you don't read that limitation, an embodiment into the claim, particularly when we have a situation here where the enantiomer depicted, they want to read out of the claim. That doesn't make any sense. It's illogical. And they're arguing that the claim is limited to one compound. If you just look at claim 14, again, you don't have to be an organic chemist to figure out that it actually claims a genus. It talks about a mid-compound of a certain formula or an acid addition salt thereof. That's at least two compounds. But they're arguing that the claim is limited to compound 101, which is hydrochloride salt. So you know right off the bat that their construction doesn't make sense. Mr. Hughes said that you had admitted that compound 101 is a racemic mix. Is that true? That is not true, Your Honor. Compound 101 is certainly a mixture. There's no information in the patent that tells us if it's a racemic mixture or not. The specification actually doesn't use the term racemic mixture. But that's sort of besides the point because it certainly is a mixture. But, again, if you look at the claim and you understand that it does depict an enantiomer, their construction can't be right because they're trying to exclude that particular enantiomer. And I submit again, it is foundational to their argument. They do argue in their briefs, and I know that they've only said part of their argument here. They do argue in their briefs that they're relying upon intrinsic evidence. That's how they get to actually limiting the claim to a racemic mixture. And that was discredited by the district court. And even if, and I do believe the clearly erroneous standard applies, even if that doesn't apply, there's an alternative. The clearly erroneous standard applies to a fact finding. The fact finding the district court made were specific to the organic chemistry book and the other organic chemistry book. That fact, it doesn't convert his claim construction in light of this specification into a fact finding. Well, Your Honor, I certainly agree that what the district court did applies to those particular facts, the book excerpts. But that's foundational to their argument. They never get to a racemic mixture otherwise. And if you also look at- Their argument is that compound 101 is a racemic mixture. That's how they claim they get to it. Yes, Your Honor, but they also agreed that at page nine of their brief that the claim does not depict compound 101. So they say it's something different. So the only reason they get- Depicts the salt, which is still a racemic mixture. Well, they don't argue that it depicts the salt. They say it depicts loracidone or compound 105. They actually say that in their brief. So that's their argument. And the only reason that they get there is based upon those book excerpts. But why shouldn't I construe claim 14 as limited to the negative enantiomer? That's what's depicted. That's the plain meaning to a skilled artisan of that picture. Why don't I construe it as limited to a negative enantiomer? Your Honor, at the very least, it certainly does include the negative enantiomer because that's what's depicted. But we also don't read the claim in isolation. We read the claim in light of the specification. We read the claim in light of the specification to ascertain whether lexicography or disclaimer has occurred. But we give the claim its plain meaning to a skilled artisan outside of those circumstances. So where is there a definition? Well, Your Honor, the definition and what informs what's actually in claim 14 is what you see at column four. Column four, lines 51 through 53. When you look at that, it's impactful language that the district court looked at in terms of coming up with its construction. Why do we need to resolve that issue? If by finding that this claim at least includes the negative enantiomer resolves the dispute between the parties, why do we need to go beyond that? Well, Your Honor, we don't need to go beyond that. But it certainly at least includes the enantiomer, the minus enantiomer. Absolutely. But if we're doing claim construction, actually looking at what a person of ordinary skill in the art would understand, it would encompass all of these other things. And that's the same thing that the defendants understood before they got in this litigation. Each of the three defendants submitted… Why would it include all? You say a person under skill would understand this picture to include all those other things, all the possible combinations and mixtures. Why? Well, because that structure that's depicted in Claim 14 is associated with Example 1. Example 1 gives a subgenus of compounds. It gives the plus enantiomer, the minus enantiomer, as well as mixtures. And when my opponents studied this claim and studied the 372 patent before this litigation started, they all came to this conclusion that it covers loracidum. Did the court reach the conclusion that you're advocating for, namely the specific conclusion that what is in Claim 14 is Example 1 with all of its relevant components? I believe so, yes, Your Honor. Where did the district court discuss Example 1? Well, Your Honor, the district court didn't discuss Example 1 specific, but it certainly came to the conclusion… It included everything. It backed into the conclusion it included everything when it said it can't be limited to a racemic mixture because the picture is of a negative enantiomer. But where did the district court conclude that the plain and ordinary meaning to a skilled artisan of Claim 14 in light of this specification is Example 1, and since Example 1 includes negative, positive, and everything in between, it's all in there. I don't see the district court having adopted your logic at all. Well, Your Honor, and I'm not saying the district court limited its analysis to the subgenus that's included in Example 1. What I'm saying is the district court looked at the intrinsic evidence, discredited their foundational extrinsic evidence, and found that consistent to have a claim that encompasses both the minus enantiomer, the plus enantiomer, and mixtures as well. So it didn't need to focus on Example 1 because, again, if it just took Example 1 and said that's all the claim covers, then that would also be… I'll tell you, if Example 1 doesn't get you there, I don't think the Column 14 statement gets you where you want it to go. That Column 14 statement is extremely broad. It doesn't say the present invention. It doesn't say every compound, and this is the narrowest compound disclosed in this patent at Claim 14. There are lots of broad claims in this patent. The one at 14 is the narrowest one. I certainly don't read the language in Column 4, lines 51 to 54 to amount to a lexicography or disclaimer. I don't read it that way, so I don't get to where you want to go unless I'm going to say Claim 14 corresponds to Example 1, and Example 1 has all these subcomponents, all of which have to be read into Claim 14. Well, Your Honor, the picture that's depicted in Claim 14 is associated with Example 1, and my opponents agree with that. You can't dissociate that picture from Example 1. But your problem with then is if we get to it, that picture isn't Example 1, right? It's Example 1A. Example 1-A, production of compound number 101. So it doesn't say it's associated with all of Example 1, right? Do you have the picture in front of you? I do have the picture in front of me. Doesn't it say Example-1A, production of compound 101? Well, Your Honor... Why couldn't 1B, 1C, 1D, and 1E be different things other than this picture? Because we're talking about two different things. The picture that you see, the actual structure with the HCL, is compound 101. That's a different picture that's in Claim 14, and my opponents admit that. So if the person of ordinary skill in the yard is reading Example 1, they would understand... The only difference between the picture at the bottom of Column 30 is the HCL label on the far end, which just means salt, and Claim 14 includes the negative enantiomer, which this is a picture of, the negative enantiomer, and it's salt. So this is a picture of what's in Claim 14. I don't understand your argument that it's not. I am arguing that the picture in Claim 14 is associated with Example 1, and I'm arguing that a person of ordinary skill in the yard... Compound 101. It's associated with Compound 101. It's associated with Example 1, which includes Compound 101. And that also includes other compounds. Correct, Your Honor. But how do I know those other compounds are meant to be encompassed by Claim 14? Well, these are self-described preferred embodiments of the patent. The patent says that. The inventors say that. Wait. I'd like you to show her where. But is it your view that every preferred embodiment, especially in a case like this where there apparently are many, has to be included in every single claim? No, that's not my view, Your Honor. But this is a situation where you have a preferred embodiment that's specifically depicted in Claim 14. So it can't be the situation... Right, it's Compound 101 that's specifically depicted in Claim 14. No, Your Honor. As they agree, the minus enantiomer is specifically depicted in Claim 14. That's what Compound 101 is. It's the minus enantiomer in salt form. No, Your Honor. They're arguing that... Look, it's got the little arrow above it. That's the negative enantiomer. No one has ever suggested anything otherwise. Your Honor, both parties agree that Compound 101 is a mixture. Absolutely agree that it's a mixture and not the negative enantiomer. The negative enantiomer is Compound 101. Well, what does that little arrow mean above Compound 101? In Compound 101, it's got that little thing above the H. I thought that was supposed to depict negative for me. That little triangle thing. I know I'm not being very technical. Your Honor, if you're... The geometric shapes are pretty straightforward. Your Honor, if you're talking about the two hydrogens, that's depicting one coming into the page and out of the page. Right, right, right. And that's not specifically directing whether or not it's negative or minus. Mr. Hugh has taken the position that what is shown as Compound 101 is a racemic mix, right? Correct. You're saying that you don't agree it's a racemic mix, but it's a mixture. Do I understand that correctly? Correct, Your Honor. Okay. And is it your view that Compound... Is it your position that Compound 105, which isn't depicted, looks the same as Compound 101? I'm just trying to understand how you're saying that the compound that's designated as 101 is one of the only compounds in Example 1. It's depicted. So why is that? Your Honor, my argument is that the structure that's depicted at the bottom of Column 30 for Compound 101 is associated with all the compounds in Example 1. Is one of the reasons why that's so is because none of the others are depicted separately as being something different? It would be absolutely redundant to draw the structure over and over again when the person of learning skill in the art knows that they're associated with each other. If you look at the descriptions on Column 31 and 32, you see that all of the other compounds, Compounds 102, importantly Compound 105, they're all described in the context of Compound number 101. So a person of learning skill in the art knows that this is the structure. And so they'll be struck by that when they see Claim 14. And they see that depiction. They'll be struck by the fact that this relates to the examples. And, Your Honor, you asked a question, where does it talk about embodiments of the invention and what's preferred? If you look at the appendix, Page 77, Column 14 of the patent, Lines 56, it begins, Practical and presently preferred embodiments of invention are illustratively shown in the following examples. Okay. Thank you. I think you answered my question that I had with your answer about how the Example 1 is referring to all these different compounds based on Compound 101. Based upon... Is that, as I understand it, that's your basis for why it is that the claim, one of ordinary skill in the art would read this portion of the specification at Columns 30 through 32 to understand that the depiction of 101 is not limited to just 101. It also includes these other compounds, 102 through 105. Do I understand that correctly? The only caveat, Your Honor, is that the depiction in Claim 14 would plainly be associated with Example 1. It's not a depiction of Compound 101, and the parties agree on that. It's not a depiction of Compound 101. If anything, it's a depiction of Compound 105, the minus enantiomer, and a person of ordinary skill in the art would understand that that's all associated with Example 1. Wait, why is Compound 101 not a depiction of what's in Claim 14? The picture looks exactly the same except the HCL at the end. And that's an important difference, Your Honor. No, it's just the salt form of the thing. You can have a salt form of a negative enantiomer, you can have a salt form of a positive, or a salt form of a mixture. So what... It's important because, as my opponents argue, if Claim 14 is limited to the hydrochloride salt and it's in fact Compound 101, then the claim that terminal clause or an acid addition salt would have no meaning. It would be superfluous. But we know the specification talks about there's several acid addition salts. So it can't be that this is just plug and play. They don't argue... Their view of Compound 101 is it's a racemic mixture or a salt thereof. And they claim that's what Claim 14 is. They also claim that's what Compound 101 is, a racemic mixture or a salt thereof, right? Am I wrong when I say that? That's what they argue. Yes, Your Honor. So if what is at the bottom... So if the picture at Claim 14 looks exactly the same as Compound 101, except that it has the HCL in the end, and we all know Claim 14 has a picture plus says or salts thereof, I don't understand the problem. Well, the problem is, Your Honor, because they say Claim 14 covers only one compound. And that can't be right. And they agree and admit in their brief that Compound 101 is the hydrochloride salt. But if you just look at the picture, it covers more than that. It's a genus. It says the compound of this formula or an acid addition of salt thereof. So that's at least two compounds. Well, fine, but I have to decide this is a matter of law because there's nothing clearly erroneous about this claim construction. So what do I decide is a matter of law? Why don't I decide that Claim 14 is limited to a racemic mixture or salts thereof because that's what the claim says? Well, the claim certainly doesn't talk about a racemic mixture. Nothing in the patent talks about a racemic mixture. The claims that the parties agree just depicts the minus anathema. So if you look at the plaintiff. It doesn't matter to me what you guys claim when it comes to claim construction or you agree to. Plus off, let's just be clear. Everything he said you agree to, you say you don't agree to. And I bet, like, anything, I got a lot of money that says when he stands up, he's going to say he doesn't agree with any of the things you claim he agrees with. So, so far, what I've found is neither of you actually agree with each other. So why isn't this a picture of the racemic mixture and salts thereof? Because when you look at it, it's depicting the minus anathema. And you can't say it's depicting compound 101, which is a mixture, because the picture for compound 101 is very different. So literally, when you look at Claim 14, the plain meaning of it shows the minus anathema. And then you're informed by the specification. The specification informs you. This picture is associated with example one, which is a subgenus of compounds. We're not talking about a lot of compounds. We're talking about the anathema depicted, its opposite anathema, and mixtures. And all mixtures, no matter what the ratio. So you actually are talking about a lot of possible compounds.  And in the grand scheme of things of the patents and its compounds depicted. Okay. Let's get it. You went over by ten minutes. So, Mr. Hugh, how much time do we have left? Thank you. You had none. So you get ten minutes, Mr. Hugh. I don't need all of that. Thank goodness. I'm not going to live dangerously. I have to try to be equal. Thank you. I won't need it. First of all, let's start with the books. It may not be the most important issue. The book excerpt argument was never the linchpin or foundation of our argument. We cited it simply to show that the intrinsic evidence here screams. I guess intrinsic evidence doesn't scream. It strongly states, indicates, that the formula in Clayton-14 is compound 101, which is a pristine mixture. And we were citing the article simply to show that that usage is perfectly normal in the art. That the depiction of one enantiomer is used as a shorthand for exactly the reasons he said, that you don't do it over and over again. The district court rejected, and I do have to review the clear error, whether or not your two organic chemistry books said the plain meaning to a skilled artist and as they look at this negative enantiomer would be to understand it could be a negative enantiomer or a racemic mixture. I'm going to live dangerously, Your Honor, and I think you can disregard that issue because we don't need it. The intrinsic evidence says... It was to give... Wait, wait. I'm sorry. Ten minutes. You don't need them all. Okay. I may. So I guess one of the things that bothered me about this case was that you submitted an expert declaration along with citations to one, two, three, four, five, six, seven, eight, nine, ten. Ten different pieces of prior art or pieces of extrinsic evidence. Ten different things. The district court, cherry plucked two and said neither of those two supported your argument, didn't consider any of the rest of them. So even if he's not clearly erroneous on those first two, I guess given how much you might have noticed I am struggling to understand the technology and having read his opinion and having seen that it sort of took a 10,000 approach level to the technology, I'm just wondering, I've never seen it happen before, but whether this is in a case where we vacate him or man and tell him, the Supreme Court said in Teva, extrinsic evidence can be used to help inform your understanding of the technology. I would like to know, I did not dig them up because they're not really relevant for appeal, but I'd like to know what all those other things you cited say about what the plain meaning to a skilled artisan of claim 14 is. Because you know what? You're both arguing the specification supports you and I might as well flip a coin. So this seems like the kind of case where maybe extrinsic evidence would actually help inform us since we're not super skilled chemists in this field. I don't know. I mean, part of me thinks that that, and guess what? If the district court had relied on extrinsic evidence for his basis, then it would be a clear error standard. And guess what? No matter how he comes out, that's going to be affirmed on appeal. Because this bet doesn't tell me for sure one thing or the other. Yes. So I don't know. Maybe tell him to go back and take some evidence and try to. I can say we did not rely on that in an argumentative or conclusory way. We cited it simply to try to give the district court comfort that the construction dictated, in our view, by the intrinsic evidence was consistent with the usage in the art. And that's the only reason we did it. Those additional references that you cited, I looked at your expert's report citing those and describing those. Do I understand correctly that those additional nine references were relied on to show that it is one convention for depicting a racemic mix is to depict one of the enantiomers? Yes, for convenience. For exactly the reasons Appley's counsel said, you don't want to write them out over and over again when you're just making a little difference, a little change on whether it's in or out. You can use it as a shorthand. And that's the only reason. It was to give the district court some comfort that this result, which we say is dictated by the intrinsic evidence, both the specification and the file that was agreed. And incidentally, this notion that somehow compound 101 is a genus is just not correct. In the prosecution history, they repeatedly said in response to the restriction requirements, we elect the species of compound 101. Species of compound one. And the salt doesn't make it a genus. Compound 101 is a racemic mixture of the two enantiomers, one of which is shown in the drawing. The salt is irrelevant. It doesn't make it a genus. You can have different salts. And the specification makes that clear. It says you can have the negative enantiomer of compound 101 in the form of a tartrate salt. It's not a different compound. And we're not limiting it to hydrochloride salt. We're saying it's this racemic mixture of these two enantiomers. Are you saying it wouldn't be a species if it was the negative, the positive, and the racemic mixture? That would be three species? That would be a genus, especially the way they've construed it, because I think, as Your Honor noted, it's a large number because it's essentially infinite, depending on how finely you want to divide the 100%. So that's not what is meant here. 101, when they have activity for antipsychotic effect and lack of side effects in tables two through six, it has to be a specific compound. It's not some amorphous compound. Well, we don't know if it's 50% or 50.92% of one and the rest the other. It's 50-50. It's a racemic mixture. It's a drug. It's got to be precise. That's why. Can't the claim be broader than the specific compound that is disclosed? Sure. Claim one, for example, is an example. In that passage they like from column four, that passage actually says, the amide compound one is broad, to paraphrase. That formula appears in claim one. Conservatively, that's more than two billion compounds. So that really doesn't say anything about narrow claim 14. So can it be broad? Sure. But not this claim. This claim is specifically linked to a formula which is identified as 101, and these intrinsic evidence in columns 31, 32, and then the tables on activity, would lead a person of ordinary skill to conclude that it's the racemic mixture and it's separate and distinct from the constituent antivirus. If claim 14 depicts much the same of what is shown as being compound 101, and compound 105 is the negative enantiomer, and claim 14 depicts the negative enantiomer, and there's nothing depicted in the patent for what compound 105 is, other than that it's based on compound 101, why doesn't the figure that's shown in compound 101 depict compound 105? Why couldn't one of ordinary skill in the art understand that? That would be kind of a hindsight leap to try to read it in. I'm just saying in terms of how one of ordinary skill in the art would read the specification. Because the person of ordinary skill in the art here would look at the claim and say, okay, there are a number of ways of using this structural formula. How is it used here? And they would look at the specification. They would see column 30 and say, oh, they're saying it's compound 101. Then they would read the specification and say, what is compound 101? And you would conclude from this that it's a racemic mixture and that it's separate from its constituent enantiomers. The activity data is reported separately. The physical properties are reported separately. They're numbered separately. Everything is different. They're not the same thing. So if compound 104 was depicted and it looked exactly the same as compound 101, that would undermine your argument. It would, but also there are other ways of claiming it where you could have made this clear. They could have said, you know, this compound, its mirror image, you know, mixtures, it's very simple. They clearly meant 101, and that's what they said in the prosecution history. We elect the species of compound 101. It's a species. It's one compound. It's the racemic mixture of two enantiomers. What if one were to say, well, 102, 103, 104, and 105 are all based in describing the specification as being based on compound 101, so why isn't that part of the species of 101? Because 101 is separate and distinct the way it's used in this patent. Did they say they elect the species of 101? Yes. Example one, where do they say the species of 101? It's in the responses to the two... Wait, what page in the appendix? Oh, appendix. Hold on. Hang on a second. The appendix is up there. Oh, is it? Yeah. Sorry. My law clerk says page 965. Why don't we turn there and see if that's what you're looking for. Yes, there are two responses to restriction requirements that are kind of back-to-back, and they both say that. What about where it says elect a group which encompasses compound 101? It's namely example one in the application, which includes compound 105. I believe that reference is to the group of claims. They canceled all the original claims, and then just before these restriction requirements, they added a whole group of claims, and I believe they're referring to the group of claims, not a group of compounds. But they say, even down further, they say then the applicant provisionally elect the species of compound number 101, namely example one. They refer to example one twice on this page. Yes. Example one does include compound 105, doesn't it? Generically, if anything, with a one in front of the ABC, yes. The answer is yes. Yes. All right. Okay. This case is taken under submission. I thank both counsel for their arguments. We're concluded.